(Decided 3rd March, 1874.)

---

THE FIRST NATIONAL BANK OF CHARLOTTE *vs.* THE NATIONAL EXCHANGE BANK OF BALTIMORE.

*Construction of the National Bank Act—Appeal from an Order re-entering a Verdict and Judgment, after the same had been stricken out.*

A National Bank, by way of compromising a claim to which it finds itself subject, may acquire stock, to be again turned into money, in order to avert or diminish an apprehended loss on account of such claim, but not for the purpose of investment or speculation.

A case was submitted to the Court without the intervention of a jury. After argument the Judge reserved his decision, and some days thereafter decided

Nat'l Bk. of Charlotte *vs.* Nat'l Exchange Bk. of Balt.

on the prayers, filed a written opinion on the law and facts, and entered up judgment for the defendant, without giving the plaintiff an opportunity of suffering a non suit. Upon exception being taken, the opinion, verdict and judgment were stricken out, the plaintiff was called, and, on its answer-ing, the opinion, verdict and judgment were re-entered. On appeal, it was HELD:

That no injustice was done to the plaintiff, and the judgment of the Court below should be affirmed.

APPEAL from the Superior Court of Baltimore City.

This was an action of *assumpsit* on the common counts to which the general issue was pleaded, and errors of pleading were waived.

In addition to the facts stated in the opinion of the Court, the following were shown by the record: When the case was called for trial, the plaintiff tendered in open Court all it had received under the contract made in September, 1866, which it disavowed, offering to annul the cancellation of the certificate of deposit, and to agree not to plead limitations in event of a suit being brought on it. The defendant declined the proffer. The plain-tiff also proved, that Wilkes, through whom the contract aforesaid was made with the defendant, and who was then the plaintiff's president, continued to be a director till some time in 1868. It also produced and read the follow-ing letters which passed between the parties at the period of their respective dates:

BALTIMORE, *August 7th,* 1869.

*To the President and Board of Directors of the*
*National Exchange Bank of Baltimore.*

Gentlemen:—As attorney of the First National Bank of Charlotte, N. C., I am instructed to notify your bank association that the Charlotte Bank repudiates in whole and in part the transactions by which John Wilkes, its late president, made a certain certificate of deposit for

$55,000 of 5-20 United States bonds, and which was afterwards, by one L. P. Bayne, fraudulently delivered to the officers of your bank in the course of illegal transactions had between them. And the Bank of Charlotte especially repudiates as unauthorized, illegal, fraudulent and void, the pretended sale made by the officers of your bank of certain so-called stock (which is still in the hands of your bank) to said Wilkes, and the payment made by the officers of the Charlotte Bank of the sum of $40,000, which went into the funds of the Exchange Bank.

On behalf of the Bank of Charlotte, I hereby demand the immediate repayment of said sum of $40,000 and interest from the date at which the same was paid into your bank.

The foregoing notification of repudiation and demand for restitution of said sum is made for the following among other reasons:

1st. The certificate of deposit was void *ab initio*. The Charlotte Bank was forbidden, by the 36th section of the Banking Act, from creating any such liability. Wilkes had no power or authority to make it, either general or special. It certified to what both Wilkes and Bayne knew was false.

2nd. The certificate was obtained by fraud, was worthless in Bayne's hands, and was not a negotiable instrument. Bayne's assignment to you carried the equities with it.

3rd. The officers of your bank had constructive notice of the above, and took the certificate in transactions expressly forbidden by the 29th section of the Banking Act, and therefore void, as was for the same reason the taking of this paper.

4th. The money of the Bank of Charlotte was paid to your bank under false representations of the officers of your bank as to the title of the Exchange Bank to the stock of the Railroad Company and the Coal Company.

The bank, in fact, has no title whatever to the stock, and the only title it could by any possibility have had, was that of a mere pledge, which cannot be sold or conveyed.

5th. The Washington, Alexandria and Georgetown Railroad stock is spurious and fraudulent, and not worth the paper it is printed on.

I trust that the due consideration of the above will induce you to order the immediate restitution of said sum of $40,000, with interest, to the Bank of Charlotte, and thus save the exposure and expense of litigating what is so plainly, according to the fundamental rules of law and business honesty, indefensible.

Respectfully,

J. DEAN SMITH,

*Atty. of First National Bank of Charlotte.*

BALTIMORE, 43 *Lexington St.*, *Aug.* 16, 1869.

J. D. SMITH, ESQ., *Atty.*, *&c.*

Dear Sir :—Your communication as attorney of the First National Bank of Charlotte, N. C., addressed to the President and Directors of the National Exchange Bank of Baltimore, has been referred to me, as the attorney of the latter bank, with the request that I should reply to it. I am instructed to say that the President and Directors of the National Exchange Bank, in view of all the circumstances connected with the settlement of their claim against the Bank of Charlotte, are surprised at the attempt now made to repudiate that transaction; and they are especially astonished at the manner in which the Bank of Charlotte has seen fit, through you, to impute fraud to the agents of the National Exchange Bank in the making of the settlement in question. The National Exchange Bank recognizes no right, legal, equitable or honest, in the National Bank of Charlotte, to claim restitution of money paid upon a fair, valuable,

and perfectly well understood consideration. It declines to entertain your proposition to return that fund upon any of the grounds set forth in your letter, and leaves the Bank of Charlotte to take such course as it may be advised to pursue in this matter.

Yours, respy.,

WM. F. FRICK.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*J. Upshur Dennis* and *John Scott, Jr.*, for the appellant.

I. The opinion of the Court below embodies a proposition of law, and is therefore the subject of an appeal. *Tinges vs. Moale*, 25 *Md.*, 454; *Thomas vs. Hunter*, 29 *Md.*, 411.

II. The judgment of the Superior Court is erroneous, because, while admitting that a National Bank has no power to purchase stocks, it, in effect, affirms that it has the power to purchase in order to make by a re-sale. If the power to purchase is not given, the fact that the purchase was made to procure the settlement of a claim held against it did not enure to make it void. *Philpot vs. Gruninger*, 14 *Wallace*, 574 and 577. The motive which induced the contract does not affect its legality. Moreover, the power is not to be found in the Banking Act, and the only power to which it can be incident, is the power to settle and discharge a disputed claim. Of course, all means of settlement must tend in that direction ; must be a transfer of something already owned by the plaintiff, and it is simply paradoxical and absurd to say, that, as an incident to the right to pay, a bank can buy stocks from its alleged creditor to make a profit by the re-sale. *Tallmage vs. Pell*, 3 *Selden*, (*N. Y.*, 342, &c.,;) *Pearce vs. Madison & Ind. R. R.*, 21 *Howard*, 442; *East Anglican*

*Railways vs. Eastern Counties Railway*, 1 *Eng. L. & Eq.*, 588 ; *Hood vs. N. Y. & N. H. R. R.*, 22 *Conn.*, 16 ; *same case*, 22 *Conn.*, 508 ; *Russell vs. Topping*, 5 *McLean*, 197, *&c.*

In the next place the power is opposed to public policy as well as to the particular policy of the Act. The case of *Fowler vs. Schultz*, 72 *Pa. St.*, 462, establishes that it was not intended by the Act of Congress, for a bank to deal in stocks, and the power to make such a contract as this, would allow a bank to give its money for stocks without limit to every one of its creditors, provided it intended to apply the money made on their re-sale to replace that which discharged their claims. *Foreman vs. Maryland Hospital*, 29 *Md.*, 530.

III. The contract being void, its execution is no defense to this suit. *Foreman vs. Md. Hospital*, 29 *Md.*, 531. There is no *delictum* of any kind in the case, and moreover, the defendant had full notice of the limitations imposed on the plaintiff's agents by the Act of Congress, and dealt with him, knowing he transcended his authority. The principal can undoubtedly disavow his acts in all such cases.

IV. The striking out of the verdict quashed it, and no new judgment could be entered except on a new verdict, either by a jury or by the judge on a fresh submission. The judge was undoubtedly mistaken in supposing that the plaintiff waived its right to a non pros, and had distinct notice of the fact in the course of the argument. The right was perfectly valueless if the defendant was aware of the verdict, because the plea of limitations would have barred a second action. To grant the right of non pros, after the defendant knew the Court's decision on the facts, prevented the plaintiff from obtaining an agreement waiving the Statute of Limitations, and obliged it to prosecute the case. It was thus an empty form and an idle ceremony after taking away the essence

of the right, viz: the uncertainty of the defendant as to what the Court's decision would be. Had the plaintiff's prayers been first granted, and the plaintiff called, the defendant might well have been in doubt as to the Court's views of the facts, and agreed not to plead limitations, if the plaintiff suffered non suit. *Hall vs. Schuchardt*, 34 *Md.*, 19.

*William F. Frick* and *I. Nevett Steele*, for the appellee.

There is no appeal from the decision of the Court, either on the prayers as they were granted, or on its opinion giving reasons for its finding on the facts.

If it were possible to consider any question of law, the decision of the Court was correct, because the contract had been fully executed, and it was impossible to put the defendant in *statu quo*. The stocks had greatly depreciated, and the verbal offer not to plead limitations to an action in the certificate of deposit amounted to nothing

The letter of the appellee did not waive tender, because it refused to return the money on the grounds stated in the letter of the appellant's attorney, and did not refer to those on which the suit was brought.

The bank had power to procure the stocks under the circumstances stated in the judge's finding, as incidental to the undoubted rights of discharging and settling a disputed claim. *Shoemaker vs. National Mechanics' Bank*, 2 *Abbott's Cir. Ct. R.*, 422; *Clark vs. Farrington*, 11 *Wis.*, 323; *Farmers & Millers Bank vs. Detroit & Milwaukee R. R.*, 17 *Wis.*, 376; *Mayor, &c., of Baltimore vs. B. & O. R. R.*, 21 *Md.*, 92; *Rutland & Burlington R. R. Co. vs. Procter*, 29 *Verm.*, 95; *Sackett's Harbor Bank vs. Prest. Lewis Co. Bank*, 11 *Barb.*, 213; *Potter vs. Bank of Ithaca*, 5 *Hill*, 490; *The Banks vs. Poiteaux*, 3 *Randolph*, 136; *Abbott's Dig. of Corporations*, 207; *Mott vs. U. S. Trust Co.*, 19 *Barb.*, 568; *Union Bank of Tenn. vs.*

OCTOBER TERM, 1873. 607

Nat'l Bk. of Charlotte vs. Nat'l Exchange Bk. of Balt.

*Ellicott, et al.*, 6 *G. & J.*, 371; *Shoemaker vs. Mech. Bank*, 31 *Md.*, 402; *Brown & another vs. Winnisimmet Co.*, 11 *Allen*, 334.

The opening of the case was no ground of appeal, it was done by the Court upon the suggestion of the plaintiff's attorneys, that they were aggrieved at its action. When opened, they refused to avail themselves of the right, and they clearly had no appeal from the overruling of their motion to grant a new trial.

ROBINSON, J., delivered the opinion of the Court.

The plaintiff below, a National Bank in Charlotte, North Carolina, desiring to increase its capital stock, and for that purpose to deposit with the proper department at Washington, $50,000 in United States bonds, employed Bayne & Co., of Baltimore, as its agent to procure and deliver them at Washington. Not having money to pay for them at the time, the plaintiff sent its president, Wilkes, to Baltimore, with a certificate previously prepared in Charlotte, as follows:

*"First National Bank of Charlotte, North Carolina.*

"CHARLOTTE, *December* 15, 1865.

"Received on deposit from Bayne & Co., fifty-five thousand U. S. 5-20 bds. 3d issue, payable to the order of themselves, on return of this certificate.

"JOHN WILKES,
"*Pres't 1st Nat. Bk. Charlotte, N. C.*"

This certificate was delivered by Wilkes, president, to Bayne & Co., in Baltimore; and on the 18th of December, 1865, Bayne & Co having endorsed the same, deposited it together with other securities, with the defendant below, a National Bank in Baltimore, as collateral security for a call loan of $80,000, then made by that bank to said firm of Bayne & Co.

A few days after the delivery of said certificate, the plaintiff deposited in New York, to the credit of Bayne & Co., a sum sufficient to pay the same, and received in January, 1866, verbal notice from Bayne & Co., that the certificate was discharged, and subject to the plaintiff's order. In March, 1866, the plaintiff received a written notice to the same effect, but it did not apply for its surrender. In April following, Bayne & Co. failed, and the plaintiff was then notified by the defendant that it held the certificate of deposit for value, and demanded the delivery of the bonds therein mentioned.

Wilkes, the president, was sent by the plaintiff to Baltimore to negotiate for the return of said certificate. He informed the defendant that it had been satisfied by payment to Bayne & Co., and disavowed any legal liability on account of same to the defendant.

To avoid suit, however, Wilkes offered to pay $5,000 upon the delivery of the certificate, which the defendant refused, but offered to take $20,000, and threatened suit unless so settled. Wilkes declined to pay this sum, but asked for delay until he could return to Charlotte and consult his directors. He returned again to Baltimore, and new negotiations for compromise of the controversy existing between the two banks in regard to their respective rights to the certificate, were opened. Wilkes ascertained that the defendant held among its collaterals from Bayne & Co., a large number of shares of Washington, Alexandria and Georgetown R. R. stocks, the market value of which had been seriously depressed by the failure of Bayne & Co. Having informed himself in regard to the condition of the stock and its supposed value, and after one or two interviews between him and the president and directors of the defendant, it was finally agreed, that the plaintiff should take 400 shares of the Washington Alexandria and Georgetown R. R. stock, 1,000 shares Maryland Anthracite stock, the same being valued

at $40,000, and 125 shares of the plaintiff's own stock, valued at $15,000, the latter to be taken by Wilkes himself, inasmuch as he was advised that a National Bank could not buy its own stock, thus making $55,000. Upon the basis of this settlement, the defendant was to deliver up to Wilkes the certificate held by it for the $55,000 U. S. bonds. The plaintiff paid to the defendant the sum of $40,000, according to the terms of the above settlement, and received the certificate for 1,000 shares Coal stock. The 400 shares of railroad stock were not then delivered, there being a suit about it at the time of the agreement, which prevented all transfers, but it was regarded and treated by both parties as belonging to the plaintiff.

In September, 1869, nearly three years after the date of the above settlement, this suit is brought by the plaintiff to recover from the defendant the $40,000 paid by it in pursuance of the arrangement above stated. The case, by agreement was tried before the Court, and the plaintiff asked the granting of four propositions of law to govern the Court in deciding upon the facts.

The first proposition is to the effect, that if the plaintiff agreed to purchase for $40,000 the R. R. and Coal stock, and paid that sum, then the Court must find for the plaintiff for that amount, provided the Court shall further find that the defendant knew the plaintiff to be a National Bank, and although the Court shall further find that the certificate of deposit was delivered up in consequence of said contract; if by said contract no part of the $40,000 was to be paid for the certificate.

Second, that if the plaintiff agreed to purchase the said stock for $40,000, and Wilkes also agreed to purchase for $15,000, 125 shares of plaintiff's stock, and the inducement to both agreements was Wilkes' desire to obtain the certificate of deposit, and he did so obtain it, that does not enure to make the first contract valid, provided the Court shall find that by the first mentioned

contract, the consideration for which the sum of $40,000 was to be paid, was the railroad and coal stock, and that no part of said sum was to be paid for the certificate of deposit.

Third, that if the plaintiff, in order to compromise the certificate of deposit, agreed to purchase it and the railroad and coal stock for $40,000, and paid the money, then the plaintiff is entitled to recover so much of said sum as the Court shall find was paid for said stock.

Fourth, that if there was an agreement for purchase, as stated in the third prayer, and it was executed, the effect of the letter of the defendant's counsel of August 16th, 1869, was to waive all tender of what was received by the plaintiff under said purchase, and the plaintiff is entitled to recover back the $40,000, if the Court shall find that the defendant was not prejudiced by the plaintiff's delay to rescind the contract, and that the same was done in a reasonable time.

The plaintiff's prayers embracing these propositions of law, were granted, but upon the facts the Court found a verdict for the defendant.

In the written opinion filed in the case, the Court admits the general proposition of law contended for by the plaintiff, that a National Bank has no power to *purchase stocks either for speculation* or *investment*, to be true, but says:

" Instead of a purchase of stocks in the ordinary sense of that term, the Court finds the transaction between the parties to have been a fair and *bona fide* compromise of a case in which the plaintiff finding itself subject to a claim for $55,000, founded upon a transaction admitted in the argument to have been a legitimate banking transaction, thought it expedient to reduce an apprehended loss by a compromise, in which it acquired the stock in question. That a National Bank has a right under such circumstances to save itself from loss through the medium

of an arrangement by which it shall receive stock to be again turned into money to avert or diminish an apprehended loss, and not for investment or speculation, the Court does not doubt, and believing from the evidence this to have been such a transactions it now enters a verdict for the defendant, and order a judgment to be entered thereon according to the course of the Court."

To the opinion and order of the Court, and to its action in the premises the plaintiff excepted.

It is contended in support of this exception that the Judge after stating his conclusion upon the facts, decided as matter of law that a National Bank under such circumstances, had the right to receive stocks to be again turned into money, to save itself from an apprehended loss, and that this Court has the right in all cases tried before a Judge without the intervention of a jury, to review any proposition of law which appears from the opinion of the Judge to have been decided below, and which may have influenced him in the rendition of the verdict. Conceding this view to be correct, for the purpose of this case, without however so deciding, we concur with the Court below in regard to the proposition of law thus announced. If, *instead of purchasing the stocks in question for speculation or as an investment, the plaintiff acquired them by way of a compromise of a claim of $55,000, alleged to be due the defendant, and for the purpose of averting an apprehended loss on account of said claim, there is nothing either in the letter or spirit of the Banking Act to prevent under such circumstances a transfer of the stocks to the plaintiff.* Whether a National Bank can take a mortgage on real estate to secure the payment of future loans is a question which does not arise in this case, and in regard to which we express no opinion. *Fowler, et al. vs. J. D. Scully, in trust for the First National Bank of Pittsburgh, Pittsburgh Legal Journal, January 22nd,* 1873.

First Nat'l Bk. of Charlotte *vs.* Nat'l Exchange Bk. of Balt.

It appears from the statement of the Court, that it had been led to suppose from the submission of the case after argument on the law and the facts by both parties, that the plaintiff's attorney had waived their right to have the plaintiff called before the verdict was entered, and being informed by them after the decision of the case and entry of verdict and judgment, that they did not waive but claimed that right, the Court struck out the entry of verdict and judgment, in order to give them an opportunity to *non pros. the case.* The plaintiff, however, when called answered, and thus refused to have a *non pros.* entered, whereupon the Court entered the verdict and judgment thereupon as before. To the striking out of the verdict, and the judgment, under the circumstances, and to the refusal by the Court to grant a new trial, and to the entry of the verdict and the judgment anew, the plaintiff excepted.

We see no just ground of complaint on the part of the plaintiff to the action of the Court in the premises. The verdict and judgment were stricken out, because the plaintiff had complained that they had been denied the right of having a *non pros.* entered in the case, and when the opportunity was offered them, they refused to avail themselves of the privilege, and answered to the call of the case. By this procedure on the part of the Court, no injustice was done to the plaintiff. It had *not the right of having a non pros. entered,* but the privilege of exercising this right, with *full knowledge of what the verdict would be.* Entertaining these views the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 3rd March, 1874.)