[File No. 6492.]

SECURITY STATE BANK OF ADAMS, NORTH DAKOTA, a State Banking Corporation, Appellant, v. W. V. O'CONNOR, as Receiver of the First National Bank of Grand Forks, North Dakota, an Insolvent National Banking Corporation, Respondent.

(276 N. W. 249.)

Opinion filed November 26, 1937.

*McIntyre, Burtness & Shaft,* for appellant.

*O'Keefe & Peterson,* for respondent.

Nuessle, J. This action was brought by the plaintiff bank to establish a claim against the First National Bank of Grand Forks in the hands of the defendant O'Connor as receiver. Plaintiff bank made an assessment on its capital stock pursuant to the provisions of chapter 96, S. L. 1931, and levied the same against 38 shares of stock which plaintiff contends were owned by the First National Bank. This assessment was not paid. The plaintiff made a purported sale of the shares for $19, leaving a claimed deficiency in the assessment of $3,781.00. Plaintiff brought this action to establish its claim in the amount of this deficiency. The case was tried to the court without a jury. Judgment was ordered and entered for the defendant. Whereupon the instant appeal was perfected.

The facts may be stated briefly as follows: On May 12, 1930, O.

S. Hanson executed and delivered to the First National Bank of Grand Forks his note for $2,500, to be paid February 1, 1931, and as collateral gave a certificate for 38 shares of stock of the plaintiff Security State Bank of Adams. This certificate was duly endorsed by Hanson at the time the transaction was consummated. It was agreed between Hanson and the president of the First National Bank that Hanson would not be called upon to pay the note but that when the same fell due it would be returned to him and the stock retained by the bank. This arrangement was not reduced to writing, but on August 2, 1930, it was confirmed in a letter written to Hanson by the president of the First National Bank as follows:

"This letter is to confirm the understanding we have with you as follows:

"We hold your note dated May 12th, 1930, due February 1st, 1931, $2,500.00. This note is secured by Certificate No. 105 for 38 shares of stock in the Security State Bank of Adams, North Dakota. It is understood that we are to look to the collateral for payment of this note and that the note is to be returned to you by February 1st, 1931, the date on which it matures, without payment."

The note was not paid and on January 31, 1931, one day before it fell due, it was returned to Hanson marked "Cancelled." The 38 shares of stock were retained by the bank. The amount of the Hanson indebtedness was charged to the undivided profits account in the bank. The stock was not listed among the assets of the bank but was carried in the collateral records. No transfer of the stock to the First National Bank was made upon the books of the Security State Bank, either at this time or at any later date. On August 2, 1930, the First National Bank of Grand Forks wrote to O. H. Lundquist, the cashier of the Security State Bank, as follows: "We hold here as collateral Certificate No. 105 for 38 shares of stock in your bank. Would you be interested in buying this stock? If so, at what price? We would be willing to accept a reasonable payment and carry you along for awhile on the balance."

. So far as appears the First National Bank never received any dividends on this stock and never attempted to exercise or enjoy any of the rights and privileges of a stockholder. Following the First National Bank's letter of August 2, 1930, written to Lundquist, the cash-

ier of the Security State Bank, there was considerable negotiating with reference to this matter, and on April 1, 1931, the First National Bank sent the stock certificate in question to Lundquist, cashier of the Security State Bank, accompanied by the following letter:

"There is enclosed herewith Certificate No. 105 for thirty-eight shares of stock in your bank issued to O. S. Hanson. This Certificate has been signed by O. S. Hanson in blank. The understanding is that ten shares of this stock is to be issued to your Assistant and the other twenty-eight shares to yourself, and in payment of this stock we agree to accept notes for the full amount in each case, and the notes are also enclosed for signature.

"A further understanding which the writer had with you over the telephone today was that in one year from now if either or both of you do not elect to go on with the deal the notes are to be returned to you without payment of any amount of principal or interest, with the further understanding, however, that the stock is to remain in the name of each of you and, while you may not have any interest in the stock, it is understood that you take your own chances about there being any liability.

"We sincerely hope you will decide to keep the stock and if you do you likely will not have any trouble about being able to make arrangements with us to carry the matter along in a reasonable way. When you issue the new Certificates endorse them in blank on the back, and return with each note. Please acknowledge receipt of this letter and we think each of you should sign the reply and agree to the terms."

On April 10, 1931, Lundquist wrote the First National Bank: "Your favor of the April 1st received with stock certificate enclosed for 38 shares of bank stock in the name of O. S. Hanson which you desire to have transferred on the books, this stock has been reissued in the name of Paul Skarstad for ten shares and attached to it is a note for $658, and twenty-eight shares have been issued in the name of O. H. Lundquist with a note attached for the sum of $1842, these notes are given as an accommodation with stock attached subject to an option of accepting or cancellation in the next twelve months. . . ."

On January 13, 1932, Lundquist and Skarstad decided they did not want to keep the stock. They advised the First National Bank to this effect and the bank returned their notes to them, retaining the stock

certificates. No transfer was made upon the books of the Security State Bank and the stock continued to stand thereon in their names. On January 20, 1932, the plaintiff attempted to make an assessment of 100 per cent on its capital stock to repair the same. This action was later rescinded on the ground that it was not properly taken. But thereafter and on November 19, 1932, a new assessment was made of 100 per cent. Notice of this assessment was sent to the First National Bank by registered mail. And service of notice of this assessment was admitted by Lundquist and Skarstad, in whose names the stock stood on the bank's books. No part of the assessment was paid by the First National Bank or by Lundquist or Skarstad. On January 5, 1933, the shares were offered for sale by the plaintiff bank and were sold to Lundquist for $19, which amount was credited on the assessment of $3,800.00. On March 6, 1933, the First National Bank was closed. Thereafter W. V. O'Connor was appointed receiver. Proof of claim for the balance of the assessment in the amount of $3,781 and interest was filed with the receiver in May 1934, and was disallowed. Thereafter this action was brought to establish the claim.

The plaintiff here contends, as it did before the district court, that at the time of the assessment in November, 1932, the First National Bank was the real owner of the stock in question and that pursuant to chapter 96, S. L. 1931, the bank became liable for the amount of the assessment after crediting thereon the sum realized from the sale of the stock. On the other hand, the defendant contends that it is not liable for the assessment because it never appeared as the owner of the stock upon the books and records of the plaintiff bank; that, in any event, the assessment was made for the purpose of repairing the capital stock of the plaintiff bank and was against the stock and no personal liability against the owner of the stock resulted because of said assessment; that the plaintiff bank elected to sell said stocks to satisfy the assessment and thereby waived any claim that might have arisen against the owner thereof because of the assessment.

The First National Bank of Grand Forks was a banking association, organized under the National Banking Act. As such it could not invest its assets in the stock of other corporations. Section 5136, U. S. Rev. Stat. (12 U. S. C. A. § 24); California Nat. Bank v. Kennedy, 167 U. S. 362, 42 L. ed. 198, 17 S. Ct. 831; First Nat. Bank v. Haw-

kins, 174 U. S. 364, 43 L. ed. 1007, 19 S. Ct. 739. And the presumption is that it did not do so and that if it did acquire any such stock this was done in an attempt to realize on account of obligations due to it. Robinson v. Southern Nat. Bank, 180 U. S. 295, 45 L. ed. 536, 21 S. Ct. 383. It could, however, take such stock as collateral security to loans made by it. Germania Nat. Bank v. Case, 99 U. S. 628, 25 L. ed. 448. And in such event, where necessary, could realize upon the collateral security and for that purpose sell the .same and buy the stock at such sale. Westminster Nat. Bank v. New England Electrical Works, 73 N. H. 465, 62 A. 971, 3 L.R.A.(N.S.) 551, 111 Am. St. Rep. 637; First Nat. Bank v. National Exch. Bank, 39 Md. 600; id. 92 U. S. 122, 23 L. ed. 679; California Nat. Bank v. Kennedy, 167 U. S. 362, 42 L. ed. 198, 17 S. Ct. 831, supra. In the instant case it appears that the First National Bank took the stock of the Security State Bank as collateral to the obligations owing to it by Hanson. It is true it was understood at the time of this transaction that Hanson did not expect to pay this obligation but that it would be discharged out of the proceeds of the collateral. By the transaction, when the Hanson note was not paid, it became the equitable owner of the stock in question. Re Argus Printing Co. 1 N. D. 435, 48 N. W. 347, 12 L.R.A. 781, 26 Am. St. Rep. 639; 6 Fletcher, Cyc. Corp. § 3795. And there was no intention on the part of the First National Bank to become the legal owner thereof by a transfer of such stock to its name on the books of the Security State Bank. This is apparent from all that was said and done with respect to the matter. When the Hanson note was returned marked "Cancelled" the amount thereof was in fact charged off the books of the First National Bank, for it was charged against the undivided profits account. The Hanson certificate was not listed among its assets but among its collateral. At once the First National Bank sought to realize on this collateral. It tried almost frantically to secure a purchaser therefor. It offered inducements of various sorts to bring about a sale of the stock, but without avail. And always it was meticulous to see that there was no transfer of the stock to itself on the records of the Security State Bank. This is well evidenced by the letters written to Lundquist, the cashier of the Security State Bank of Adams, and by the terms of the transaction which was ultimately entered into with him. In the letter of April 1, 1931, when

it transmitted the Hanson certificate to Lundquist in consummation of the deal made with the latter, the First National Bank was careful to state that: ". . . in one year from now if either or both of you do not elect to go on with the deal the notes are to be returned to you without payment of any amount of principal or interest, with the further understanding however, that the stock is to remain in the name of each of you and, while you may not have any interest in the stock, it is understood that you take your own chances about there being any liability."

We conclude then that in an endeavor to realize on its collateral it became the equitable owner of the stock but that it never acquired the legal title thereto.

Chapter 96, Sess. Laws 1931, provides for the government and regulation of banking within the state of North Dakota and for the organization and operation of state banking associations. Section 21 of this act, among other things, provides: "The capital stock of each state banking association shall be divided into shares of one hundred dollars each, and be deemed personal property and transferable on the books of the association in such manner as may be prescribed by the by-laws or articles of such association. . . . Every person or corporation becoming a shareholder by such transfer shall in proportion to his shares succeed to all rights and liabilities of prior holders of such shares existing by reason of ownership thereof. . . ."

The plaintiff insists that even if the First National Bank of Grand Forks had no legal title to the shares it had taken as collateral from Hanson because there was no transfer on the stock book of the association, nevertheless it was the substantial owner of such shares and therefore a stockholder within the purview of § 21, supra, and so subject to the liabilities of a stockholder. And in that behalf the plaintiff cites and relies upon numerous decisions of the Supreme Court of the United States and other authorities predicated on such decisions, wherein it is held that under the provisions of the National Banking Act, and particularly § 5139, U. S. Rev. Stat. (12 U. S. C. A. § 52) the actual owner of shares of stock is a shareholder within the purview of § 5139 and subject to liability as such though the stock does not stand in his name upon the books of the banking association. Among the cases thus cited are the following: Germania Nat. Bank v. Case, 99 U. S.

628, 25 L. ed. 448, supra; Pauly v. State Loan & T. Co. 165 U. S. 606, 41 L. ed. 844, 17 S. Ct. 465; Ohio Valley Nat. Bank v. Hulitt, 204 U. S. 162, 51 L. ed. 423, 27 S. Ct. 179; Rankin v. Fidelity Ins. Trust & S. D. Co. 189 U. S. 242, 47 L. ed. 792, 23 S. Ct. 553; Stuart v. Hayden, 169 U. S. 1, 42 L. ed. 639, 18 S. Ct. 274; Bowden v. Johnson (Adams v. Johnson) 107 U. S. 251, 27 L. ed. 386, 2 S. Ct. 246; Wright v. Keene, 82 Mont. 603, 268 P. 545, 60 A.L.R. 109.

The provisions of § 21, chap. 96, above quoted, are identical with and apparently were adapted from § 5139, U. S. Rev. Stat., and, at first blush, the cases on which the plaintiff relies would appear to sustain its contention. However, an examination of these cases discloses that in every instance the liability sought to be enforced against the shareholder was on account of his individual responsibility to the extent of the stock owned by him for the debts of the banking association, imposed by § 5151, U. S. Rev. Stat. (12 U. S. C. A. §§ 63 and 64), which is identical with § 22 of chapter 96, providing for a like responsibility of shareholders of North Dakota banking associations. And, as pointed out in Robinson v. Southern Nat. Bank (C. C. A. 2d) 94 F. 964, practically all of the cases in which the "real owner" was held liable under § 5139, U. S. Rev. Stat. were those in which, being the registered owner, he had transferred his shares to another for the purpose of escaping the liability of a stockholder, or caused them to be registered in the name of an irresponsible transferee. On the other hand, many cases decided by the federal courts may be found wherein it is held that "A pledgee of stock of a national bank, who sells it in accordance with the terms of the pledge, and becomes the purchaser but never has it transferred on the books of the bank, is not liable for an assessment made under Rev. Stat. § 5151, on the bank's insolvency." See Robinson v. Southern Nat. Bank, supra; Richmond v. Irons, 121 U. S. 27, 30 L. ed. 864, 7 S. Ct. 788; Anderson v. Philadelphia Warehouse Co. 111 U. S. 479, 28 L. ed. 478, 4 S. Ct. 525.

The relationship between a corporation and its shareholders is contractual. Assent on the part of both is essential to its creation. It exists only when the parties have either expressly consented to such relation or their conduct has been such that in law consent will be implied. Berkeley Hillside Properties Co. v. Kelly, 78 Cal. App. 29, 247 P. 600; 6 Fletcher, Cyc. Corp. §§ 3768, 3798; 14 C. J. 843. Con-

sistent with this theory of the relationship "... the rule may be stated generally that a transferee of stock who does not appear upon the transfer books of the corporation as such is not liable as a shareholder, unless, because of some action taken by him or by the corporation, and assented to by him, expressly or impliedly, by which his recognition as a shareholder by the corporation and by himself is brought about, he is estopped to deny that he is a shareholder when sued by the corporation or its creditors for calls or assessments." See annotation to Wright v. Keene, 82 Mont. 603, 268 P. 545, 60 A.L.R. 109, supra. With like consistency § 4527, Comp. Laws 1913, of the general corporation laws, in express terms declares that a transfer of stock shall not be valid except between the parties unless the transfer is entered upon the corporate records. And there is no provision to the contrary in chapter 96, Sess. Laws 1931, supra. On the contrary, § 13, subsection (f), of that act, provides that an incorporated banking association shall have power to provide by its board of directors by-laws not inconsistent with the laws of this state to regulate the manner in which its stocks shall be transferred. And the by-laws of the Security State Bank provide:

"Section 12. Certificates of Stock signed by the President and Cashier and under the seal of the bank, shall be issued to Stockholders, and the Certificate shall state upon the face thereof that the stock is transferable only upon the Books of the bank; and when Stock is transferred the Certificates thereof shall be returned to the bank and cancelled and new Certificates issued.

"Section 13. The Stock of this bank shall be assignable and transferable only on the Books of the bank; and a Transfer Book shall be provided in which all assignments and transfers of Stock shall be made."

It seems to us that § 18 of chapter 96, supra, which provides that assessments may be imposed to make good impairments of the capital stock, recognizes the rule crystallized in § 4527, supra, and re-enacted in the by-laws above set out, and that § 23 of said chapter 96, providing for the manner in which such assessment may be enforced, likewise does. Section 18 provides that when such assessments are made, notice thereof shall be served by registered mail upon each stockholder of record. Section 23 provides that in enforcing such assessments, no-

tice of the sale of stock in that behalf shall be given by forwarding the same to the person in whose name the stock stands on the association's stock book; that when a sale is had it shall effect the cancellation of the outstanding stock certificate in the hands of the delinquent shareholder, his assignee or pledgee; further that such cancellation shall not impair the right of the association to take such further action as to it seems best to recover the amount of such assessment from such delinquent shareholder. Thus it seems clear that the statute makes a distinction between a shareholder of record and his assignee or pledgee to whom there has been no transfer on the books of the bank.

It must be remembered also that the liability sought to be enforced in this case is not the liability created by the statute, § 22 of chapter 96, providing for the shareholders' individual liability for the debts of the bank to be enforced by the bank or its creditors for the benefit of the creditors. The liability here sought to be enforced is voluntary. It is self imposed by the stockholders for the benefit of the bank as a going concern and so for the benefit of the stockholders themselves. Baird v. Eidsvig, 59 N. D. 484, 230 N. W. 721. In the instant case, though the First National Bank was the equitable owner of the shares in question by reason of its transaction with Hanson, nevertheless there was no completion of the transaction as between the First National Bank and the Security State Bank by the transfer to the former of the shares of stock on the transfer book as required by the statute, § 4527, supra, and the by-laws of the Security State Bank. Clearly, the First National Bank never intended to become a shareholder of the Security State Bank. It sought in all its dealings with respect to the matter to avoid becoming such. It made known to the Security State Bank, through the latter's cashier, its wish and intention in that regard. There was no concealment of its position with respect thereto. It had acquired its equity in the stock only that it might realize on an obligation owing to it. It was forbidden by the federal statute under which it was organized to do more than this. It never sought to exercise any of the rights or enjoy any of the privileges of a stockholder. It had no voice in voting the assessment to make good the impairment of the capital stock. On the other hand, the Security State Bank knew all the facts. It never entered the transfer of the shares to the First National Bank on its records. It did make the record show the trans-

fer from Hanson to Lundquist and Skarstad. But, when Lundquist and Skarstad decided not to go on with their deal with the First National Bank and keep the stock, there was no retransfer on the record out of their names.

We conclude then that the First National Bank of Grand Forks never became a shareholder of the Security State Bank so as to be subject to the liability on account of which the latter seeks to recover. See Hamilton v. Loeb (C. C. A. 3d) 186 F. 7, writ of certiorari denied by the Supreme Court in memorandum decision, 223 U. S. 720, 56 L. ed. 629, 32 S. Ct. 523. Thus holding there is no necessity for us to pass upon the other questions raised.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BURR and MORRIS, JJ., concur.